## ESTATE OF HOWARD CRITTENDEN.

No. 4511--Feb. 20, 1873.

WILL.—CHARGE TO JURY ON CONTEST OF PROBATE.

NARCOTICS.—INOFFICIOUS WILL.—MENTAL INCAPACITY arising from the OPIUM HABIT. UNDUE INFLUENCE.

ATTESTATION.—NO FORMAL ATTESTING CLAUSE NECESSARY.—REQUEST TO WITNESSES TO SIGN.—NEED NOT BE A DIRECT REQUEST.

Construing sections, C. C., 1270, 1272, 1276; C. C. P., 1312, 1313, 1317.

*Williams & Thornton* and *C. T. Botts*, for proponents.

*Jas. L. Crittenden & J. M. Kinley*, for contestants.

*R. W. Hent*, for minor heirs.

The Court charged the jury as follows:

As to the first issue:

Was said Howard Crittenden of sound and disposing mind at the time of the alleged execution of said will?

A person is of sound and disposing mind, who has mental capacity to fairly and rationally consider the character of the property to be disposed of, the nature of the ties of blood, affinity, marriage or friendship, the persons to whom he wishes his property to go, and the means of disposing of it.

The question of strength or weakness of mind does not enter into the consideration of this issue; you are to look only to soundness or unsoundness. Thus, a person of naturally strong mind may be by sickness or other distress so reduced physically as to be quite inadequate to fully grasp and comprehend some abstract proposition of the exact or natural sciences, and yet be able to comprehend his property and determine whom he desires should be the recipients of his bounty. So, a person of *weak* mind may not understand or be able to comprehend the theory of the solar spectrum, and yet be able to dispose of his estate by will. So, a weak mind as well as a strong mind may suffer under distress caused by affliction, and yet be able to attend to the affairs of life. You may ask yourselves, Was Howard Crittenden, at the time he executed this instrument, capable of under-

standing and appreciating the business in hand? There appears to be no evidence of insanity as it is understood in the popular meaning of the word. You should, however, be satisfied from the evidence as to whether he was of sound and disposing mind, or whether his mind was so affected by disease or otherwise as to disqualify him from making a will. If he had sufficient mental capacity to fairly and rationally consider the nature of the property to be disposed of, the persons having moral or other claims upon him, his relations, friendships, duties and obligations, and the persons to whom, and the proportions in which he wished his property to go, he was of sound and disposing mind; but if his mind was so affected by disease or otherwise to an extent that his mental faculties were incapable of so judging and determining, then he was not of sound mind. Did Howard Crittenden understand of what his property consisted? Was he capable of considering who his relatives and friends were? Did he desire that his mother should have the proportion named to her, and that his sister and brother, mother-in-law, sister-in-law, and Mrs. Brooks, should have the proportions respectively named to them? It is not for you, gentlemen, to determine whether it would have been better if he had left all his property to his mother or to his younger brother or sister, or whether he should have left some to Parker or James. *That* matter was for him to determine. Neither is it for you to determine whether he acted wisely in naming Mrs. Fisher or Miss Fisher or Mrs. Brooks as legatees. That matter, also, was for him to determine. Neither courts nor juries are to dictate to people as to the persons to whom they shall leave their property. If the decedent was of sound and disposing mind, he had a legal right to cut off every relative and friend, and leave all to some benevolent object or even to a stranger. In this regard, the fact that his younger brother and sister are minors, makes no difference. He had the legal right to give them every dollar; he had the legal right to give them nothing; he had the legal right to give them what he has. If he had wished to provide more liberally for their support and education, he had the right to do so; he had the right to omit doing so. Heirs have no inher-

ent *right* to any property of their relative, except to that of which he dies intestate.   If he sees fit to make a will, he has a right to dispose of his property in such way as to him may seem fitting.

Now, as to the proofs.   The proponents have offered proof as to the general sanity and soundness of mind of the decedent.   If you believe that he was in general of sound and disposing mind, then it becomes incumbent upon the contestants to show that this instrument was executed at a time when he was of *unsound* mind.   It is claimed by the contestants that he was in the habit of taking laudanum, morphine, and other narcotics, and that when under their influence he was incapacitated from doing business; that he always took such narcotics whenever a disappointment or affliction came upon him; and that when the affliction of the death of his family came upon him, he resorted to the same drugs, and was by their use rendered unfit to make a will at the time this instrument was executed.   That, gentlemen, is a question entirely for you to determine.   You are to indulge in no *surmises* upon this matter; you are to be governed by the *proofs*, and by the conviction you receive therefrom.   If you believe that he took these drugs, at the time indicated, you must go a step farther; it is not enough that he took the drugs; but you must also believe that at the time of executing this instrument he was so far under their influence as not to be of sound and disposing mind.   It may or may not follow, according as you shall believe, that because he was incapacitated in 1868, or at that love affair in 1869, he was also incapacitated in 1871—of that, you are to determine.

You are at liberty to take into consideration the very paper itself here offered for probate, its provisions, the handwriting, and the manner of its execution.

A will produced by undue influence cannot stand.   Undue influence is any kind of influence, either through fear, coercion, importunity, or otherwise, by which the testator is prevented from expressing his true mind. It must, of course, be an influence adequate to control the free agency of the testator.   ''A testator should enjoy full liberty and freedom in making his will, and possess the power to withstand all

contradiction and control. That degree, therefore, of importunity or undue influence which deprives a testator of his free agency, which is such as he is too weak to resist, and will render the instrument not his free and unconstrained act, is sufficient to invalidate it." I have a legal right to ask of a person making his will, that he direct his property to go in any given channel; I may even urge and importune him to make me the beneficiary; and if he have strength of mind sufficient to determine for himself, the will is good, even though he adopt my suggestions; but if I ask or importune a weak mind, one exhausted by disease or otherwise, to such an extent that he do not have sufficient strength of mind to determine for himself, so that the proposed script expresses *my* views and wishes rather than his own, it is not his will. If the testator had sufficient memory and intelligence to fairly and rationally comprehend the effect of what he was doing, to appreciate his relations to others, and the character and effect of the provisions of the will, and the nature of the property he wished to dispose of, and the persons to whom and the manner in which he wished to distribute it, and had sufficient force of mind to express his *own* wishes, and did so express himself, it is good. It is not necessary that he should have acted without prompting. Importunity or influence, to have the effect of invalidating a will, must be in such a degree as to take away his free agency.

The fact, if you find it to be a fact, that Mrs. Fisher was with the decedent at Galveston at the times spoken of, is not, of itself, evidence that she exercised any undue influence. Before you can *find* that she did exercise such influence, you must *believe* that she did; and that belief must be founded upon something—it must be founded upon or legitimately concluded from the testimony. You are at liberty to take into consideration all the circumstances of their being together, and of their relations, actings and doings.

It is not necessary that decedent should have signed in the presence of the witnesses, but it is necessary that the witnesses sign in the presence of each other and of the testator. You are the sole judges of the facts as to such sign-

ing.   If there be no proof to the contrary, you may presume that the paper was thus signed, if you find that the handwriting of decedent and either one of two subscribing witnesses has been proved.

The fact of the assignment or transfer by Parker and James L. to Grove Adams, of any portion of their interest, for the benefit of their younger brother, you have nothing to do with.   You will not take it at all into consideration. They had a legal right to make that transfer if they wished to do so—but the transfer would not at all affect the making of the will.   If this script was the will of Howard Crittenden at all, it was his will long before the transfer was made; and the transfer would no more affect the validity of the will, than a subsequent conveyance of real estate, by any person, would affect the deed by which he had received the estate.

You have nothing to do with the present feelings or wishes of any of the parties to this controversy.   If the decedent made a will, and if this is his will, it makes no difference now what *they* think of its provisions.   The opinion of J. L. Crittenden or of Parker Crittenden as to the propriety of any provision in this script, is no more to you than the opinion of Mrs. Crittenden, and hers no more than Mrs. Fisher's.   The desire of any of these parties to this controversy that either or both of the minors shall be more amply provided for, you have nothing to do with.   Their views and wishes as parties are of no manner of moment, nor will they aid you in arriving at a conclusion upon any of the issues presented to you.   The desire, too, of the legatees at Vicksburg are of no manner of account to you.

As to request to sign as witnesses — the request may be words or signs.   It may be implied.   For instance—if I am about making my will, it is a good request if I by words make the request; it is good, if the request is made for me by another, I understanding the matter and acting in accordance with the making of the request.   No particular form of request is necessary.   It may be implied from acts.   Anything which conveys to the witnesses the idea that I desire

them to be witnesses is a good request.   Even a knowing acquiescence may be equivalent to an actual request in words.

It is not necessary that there be any attesting clause, beyond the fact that the witnesses sign as such.   If the witnesses simply sign their names without anything of what is known as attesting clause, it is good.   The omission to state in the attesting clause that the decedent requested the witnesses to sign as such, is of itself of no consequence.